UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ANGELA RIVERA-CARRASQUILLO,
et al.

    Plaintiffs,

v.

CENTRO ECUESTRE MADRIGAL, INC.,
et al.

    Defendants.

Civil No. 3:12-01862 (JAF)

## MEMORANDUM TO COURT OF APPEALS
## REGARDING ISSUES ON REMAND

On January 25, 2016, the First Circuit Court of Appeals remanded this case to us "to render [a] decision on the defendants' renewed motion for judgment as a matter of law within ninety (90) days." (ECF No. 176.) Defendants filed the motion on November 20, 2013, pursuant to Federal Rule of Civil Procedure 50(b), *see* ECF No. 134, twenty-eight days after we had entered judgment against them, following a jury trial, and thirty days after the jury had been discharged. (*See* ECF No. 128.) Plaintiffs then filed a timely opposition to the motion. (ECF No. 139.) Without having sought or obtained our leave to file a reply, defendants requested an extension of time for a reply. (ECF No. 144.) On December 10, 2013, we denied the motion in a line order, and then denied the request for an extension as moot. (ECF Nos. 150, 151.) Looking back at this case two and one-half years later, we appreciate the opportunity to explicate our reasons for denying the Rule 50(b) motion. We now see that, amidst the heat and frustration of a poorly-litigated case, we often used our rulings to voice our disapproval of the sloppy and

confused lawyering that the parties brought to the trial, which, in turn, may have given misleading signals about the basis of our subsequent denial of defendants' post-judgment motion.

Under Federal Rule of Civil Procedure 50(a), "[i]f a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," an opposing party may file "[a] motion for judgment as a matter of law . . . at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a). "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). "The Rule 50(a) motion 'must be sufficiently specific so as to apprise the district court of the grounds relied on in support of the motion.'" *RFF Fam. P'ship, LP* v. *Ross*, 814 F.3d 520, 5__ (1st Cir. 2016) (*quoting T G Plastics Trading Co.* v. *Toray Plastics (Am.), Inc.*, 775 F.3d 31, 39 (1st Cir. 2014). A party may not rely on arguments made before a "full-dress trial" has "fully develop[ed]" the record to supplement its Rule 50(a) motion. *Jones ex rel. United States* v. *Mass. Gen. Hosp.*, 780 F.3d 479, 487-88 (1st Cir. 2015).

If a party wants to reinvoke an argument made in an earlier summary-judgment motion, for example, it cannot simply gesture at the earlier argument, but "must restate its objection in [the] motion for judgment as a matter of law." *Id.* at 488 (*quoting Ji* v. *Bose Corp.*, 626 F.3d 116, 127 (1st Cir. 2010)). That is true even "where a 'party's challenge is based on a circumscribed legal error, as opposed to an error concerning the existence of fact issues.'" *Id.* at 488 n.3 (*quoting Ji*, 626 F.3d at 127). "Arguments not 'spell[ed] out . . . squarely and distinctly' in the [motion] are waived." *T G Plastics Trading*, 775 F.3d

at 39 (third alteration added) (*quoting United States* v. *Samboy*, 433 F.3d 154, 161 (1st Cir. 2005)). "[A]rguments not made in a motion for judgment as a matter of law under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b)." *Jones*, 780 F.3d at 487 (*quoting Costa-Urena* v. *Segarra*, 590 F.3d 18, 26 n.4 (1st Cir. 2009)). That is an "unqualified" rule. *Id*. at 488.

At the close of the evidentiary part of the trial, defendants moved the court for judgment as a matter of law. The totality of their argument has been transcribed and is available in the docket in ECF No. 174. They did not make a Rule 50(a) argument at any other time between the final admission of evidence and the submission of the case to the jury. They did not submit a written motion. In their oral Rule 50(a) motion, defendants made three arguments.

First, they argued that each defendant, except for Pasión Ecuestre, Inc., and their joint insurer, Integrand Assurance Co., should be dismissed because "there is no evidence in the record that relates [the other co-defendants] in any way with [Pasión Ecuestre]." (ECF No. 174 at 3.) In making this argument, defendants effectively conceded that at least Pasión Ecuestre and its insurer could be held liable for plaintiffs' injuries because it was the company that directly "operate[d]" the horse ride that led to the injuries. (*Id*.)

Second, defendants argued that Pasión Ecuestre should also be dismissed because the case against Pasión Ecuestre "was not brought in one year." (*Id*. at 5.) Defendants did not argue that Gerardo Calderón-Lozano (Calderón), the owner or director of Pasión Ecuestre, should also be dismissed for prescriptive reasons. Defendants admitted that the limitations period was tolled so long as Pasión Ecuestre's identity as a liable party

remained unknown to plaintiffs despite their due diligence. (*Id*. at 10.) But, defendants asserted that plaintiffs were "on notice" about Pasión Ecuestre's identity as of "nine or ten months after the accident" when plaintiffs received, from the third party who had paid for the horse ride, a credit-card bill indicating that the charge for the horse ride had gone to Pasión Ecuestre. (*Id.* at 9.) Defendants then undermined their argument, however, by agreeing that conflicting evidence existed in the record. (*Id*.)

Finally, in response to the claim that as the "possessor" of the horse that injured plaintiffs, defendants were liable for the damages, regardless of any negligence on their part, under Article 1805 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5144, defendants argued that plaintiffs were the actual possessor of the horse because they had contracted to ride it. (*Id*. at 20-26.) Defendants based their argument on their reading of the case of *Santos* v. *Ramos Cobián*, 87 P.R.R. 446 (P.R. 1963). (*Id*.)

After allowing defendants to make their Rule 50(a) motion in full, we denied it from the bench. As to their first argument, we dismissed every defendant, except Pasión Ecuestre, Gerardo Calderón-Lozano (Calderón), who owned Pasión Ecuestre, Centro Ecuestre Madrigal, Inc., which owned and operated Hacienda Madrigal and allowed Pasión Ecuestre to market itself under the Hacienda Madrigal name, and Integrand Assurance, the above defendants' joint insurer under a single policy. We told defendants that we were keeping these co-defendants in the case because they were clearly related to each other, as indicated by their joint "appear[ance] in the release" that employees at Hacienda Madrigal had the horse riders sign and because they all shared "the same

insurance" policy for their operations at Hacienda Madrigal. (*Id*. at 4.) Defendants then acquiesced in our ruling and our reasoning by failing to object to either of them.

If an objection had been registered, we would have expounded on our reasons for keeping Centro Ecuestre Madrigal and Calderón in the case. Calderón was liable for plaintiffs' injuries during the guided horse ride on two grounds. First, as the owner or director of Pasión Ecuestre, he was liable, under 31 L.P.R.A. § 5142, for the damages caused by Pasión Ecuestre's guides during the ride. And, under the plaintiffs' theory of the case, the damages were "due to the negligence of the guides who were conducting plaintiffs' horseback riding tour." (ECF No. 69 at 2; *see also id*. at 4.) Second, Calderón was also a "possessor" of the Pasión Ecuestre horse for purposes of 31 L.P.R.A. § 5144 in the same way that Rafael Ramos Cobián, the owner of the El Rancho Hotel, was found by the Puerto Rico Supreme Court to be a possessor of the El Rancho Hotel horse that had been rented to, and then injured, Jesús Manuel Santos in the case of *Santos* v. *Ramos Cobián*, 87 P.R.R. 446 (P.R. 1963). The Court's analysis in that decision applies directly to the facts of this case.

Meanwhile, Centro Ecuestre Madrigal was liable for plaintiffs' injuries during the guided horse ride on two grounds as well. First, it is undisputed that Centro Ecuestre Madrigal had opened its doors and its land to the public for purposes of providing, among other things, horse rides, stables, trails, and a restaurant. By this means, Centro Ecuestre Madrigal monetized its property. However, Centro Ecuestre Madrigal did not provide these services directly, but instead contracted with third parties like Pasión Ecuestre to provide them. Centro Ecuestre Madrigal advertised and marketed these services under

the common name Hacienda Madrigal. Indeed, Centro Ecuestre Madrigal knowingly permitted Pasión Ecuestre to advertise and market itself and its guided horse rides under the Hacienda Madrigal name. Although it held itself out to the public as a ranch offering food, horse rides, and horse boarding, Centro Ecuestre Madrigal, doing business as Hacienda Madrigal, had actually farmed out the provision of these services to companies like Pasión Ecuestre, while still advertising the services as Hacienda Madrigal's. In fact, at the top center of the liability-release form for the horse rides at Hacienda Madrigal, the name "Pasión Ecuestre" is hidden in small font under the main name "Centro Ecuestre Madrigal," and the subsuming of Pasión Ecuestre's name under Hacienda Madrigal's continues throughout the release. The record clearly establishes that, by these means among others, Centro Ecuestre Madrigal led the public, including plaintiffs, to reasonably believe that it was the apparent principal of the persons operating the horse rides. The record is silent as to how a reasonable consumer was supposed to know that Pasión Ecuestre was not an agent of Hacienda Madrigal's or why a reasonable consumer should not have trusted in good faith that Centro Ecuestre Madrigal was the principal of those operating the horse rides. As such, under Puerto Rico law, Centro Ecuestre Madrigal "may be held liable for the acts of its apparent agent," here, Pasión Ecuestre. *See Grajales-Romero* v. *Am. Airlines, Inc.*, 194 F.3d 288, 293 (1st Cir. 1999); *see also Berríos Pagán* v. *Universidad de P.R.*, 116 D.P.R. 88 (P.R. 1985).

We did not let this matter, of Centro Ecuestre Madrigal's apparent authority over Pasión Ecuestre, go before the jury for two reasons. First, no one disputed the factual basis of the apparent authority, and it would have been unreasonable for the jury to find

that apparent authority did not exist. Indeed, such a finding could have been based only on speculative or conclusory grounds, and so we decided the matter against Centro Ecuestre Madrigal as a matter of law. Second, we were sanctioning Centro Ecuestre Madrigal for the fact that, as we had found, it was not until January 30, 2013, that Centro Ecuestre Madrigal had meaningfully disclosed to plaintiffs the identity of Pasión Ecuestre and Calderón. By that point, plaintiffs had spent years, including pursuant to discovery orders in the Puerto Rico court, in conversation with Centro Ecuestre Madrigal in search of the identity of the persons in charge of the horse ride that had injured them. And, Centro Ecuestre Madrigal and its agents had repeatedly responded with incomplete, if not utterly incorrect, answers. Moreover, in their amended complaint, filed on October 19, 2012, plaintiffs alleged that Centro Ecuestre Madrigal was the corporation that had been established to "operate" the horseback riding facility at Hacienda Madrigal, and that, at the time of their alleged injury on July 4, 2009, Centro Ecustre Madrigal had farmed out its horse rides to a corporation named La Gloria. (ECF No. 4 ¶¶ 3, 5, 9-10.) Instead of answering those allegations in a clear, truthful manner, defendants simply "denied" them "due to lack of knowledge and information sufficient to form a belief about their truth." (ECF No. 10 ¶¶ 3, 5, 9-10.) Defendants' answer does not once mention Pasión Ecuestre. That constituted yet another example of bad-faith litigation that we found sanctionable.

Although we agree that a federal judge generally lacks power to sanction a party for conduct occurring in another court, this case presents an exception. Centro Ecuestre Madrigal's discovery abuse before the Puerto Rico court was clearly intended to both serve their interests and hurt plaintiffs. Indeed, defendants hope that, thanks to the abuse,

plaintiffs go uncompensated for their injuries. When plaintiffs voluntarily dismissed their Puerto Rico case, the abuse had not yet come to light, thereby depriving the Puerto Rico court of the opportunity to find and sanction the abuse itself. Thus, the burden falls to us, and only us, to sanction it. And, we may sanction this abuse because it is closely "intertwined" with the case before us. *See In re Lothian Oil, Inc.*, 531 Fed. Appx. 428, 445 (5th Cir. 2013). In fact, the progress of this case from the Puerto Rico court to our own was analogous to a removal, especially in terms of continuity and the direct and unmistakable influence of the prior proceedings on those before us. *Cf. Preaseau* v. *Prudential Ins. Co.*, 591 F.2d 74, 79 (9th Cir. 1979) (*quoting Butner* v. *Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963); *In re Pappas*, 1994 U.S. App. LEXIS 8881, *4-5 (9th Cir. 1994). So, we sanctioned Centro Ecuestre Madrigal for engaging in bad-faith and abusive tactics and for failing to disclose to plaintiffs the identity of its apparent agent in a timely manner.

The second reason why Centro Ecuestre Madrigal was liable for plaintiffs' injuries during the guided horse ride was because, under Puerto Rico law, an entity that "directly or indirectly hire[s] an independent contractor shall be held jointly liable for the negligent harm caused by the latter in the performance of the work if said harm is a risk foreseeable by the employer." *Heddinger* v. *Ashford Mem'l Cmty. Hosp.*, 734 F.2d 81, 86 (1st Cir. 1984) (*quoting Martínez Gómez* v. *Chase Manhattan Bank*, 108 D.P.R. 515 (P.R. 1979)). "The person who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of harm to a third person, unless special precautions are taken, is answerable for the damages caused by the

failure of the contractor to take said precautions, even though the employer may have provided for them in the contract or otherwise." *Lopez* v. *Cruz Ruiz*, 131 D.P.R. 694, ___ (P.R. 1992) (*quoting Martínez Gómez*, 108 D.P.R. at ___). Centro Ecuestre Madrigal's liability here is concerned with "special risks, peculiar to the work to be done [by Pasión Ecuestre in offering horse rides], and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize a necessity of taking special precautions." *See id.* (*quoting Martínez Gómez*, 108 D.P.R. at ___). "'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself." *Id.* (*quoting Martínez Gómez*, 108 D.P.R. at ___).

Guided horse rides, because they involve human-animal interactions, possess a special risk and danger. That is why 31 L.P.R.A. § 5144 provides that "[t]he possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray." The Puerto Rico Supreme Court has held that "the basis of such liability rests on a presumption of fault for lack of vigilance" because possessing an animal requires special supervision. *Santos*, 87 P.R.R. at 448-49 (*quoting Serrano* v. *López*, 79 D.P.R. 979 (P.R. 1957)). And, pursuant to *Santos*, Pasión Ecuestre and Calderón were possessors of the hired horse that caused plaintiffs' injuries. *See id.* at 451. Thus, under the legal presumption embedded in 31 L.P.R.A. § 5144, if the jury were to find, as it did here, that the horse caused the plaintiffs' injuries, it would follow that Pasión Ecuestre did not take the necessary precautions and that, under *Cruz Ruiz* and *Martínez Gómez*, Centro Ecuestre Madrigal is liable as a result. And, if the jury

had found that the horse did not cause plaintiffs' injuries, judgment would have been entered for defendants.

As to defendants' second argument in their Rule 50(a) motion, we denied it for several reasons as well. Our statements on the record spoke more to our frustration over the slyness of defendants' argument, faulting plaintiffs for not discovering sooner the identity of Pasión Ecuestre and Calderón as co-tortfeasors when the original defendants' discovery abuses and bad-faith responses were clearly the source of the problem, than to our reasons for rejecting the argument. And, our reasons for rejecting it are quite simple.

"Puerto Rico's statute of limitations for tort actions like this one is one year." (ECF No. 175 at 4, *citing* 31 L.P.R.A. § 5298(a)(2).) Plaintiffs' injuries occurred on July 4, 2009. "The one-year clock begins ticking 'from the time the aggrieved person had knowledge' of the existence of her claim," which knowledge must include knowing "who is (or may be) responsible for that injury." (*Id*. at 5, *quoting* 31 L.P.R.A. § 5298(a)(2).) Defendants claim that plaintiffs had acquired this knowledge "by May 2010." (ECF No. 134 at 10.) Defendants do not claim that plaintiffs should have acquired the knowledge any earlier. We believe that plaintiffs proved that they acquired the knowledge only in January 2013, but we will accept defendants' claim as true for the sake of argument. In fact, our reasoning holds good even if plaintiffs had acquired the knowledge at the time of injury. That is because plaintiffs initially filed suit against Centro Ecuestre Madrigal in Puerto Rico court on June 11, 2010, "within the one-year statute of limitations." (ECF No. 175 at 13.) And, for the reasons stated above, Centro Ecuestre Madrigal and Pasión Ecuestre are co-tortfeasors.

"Article 1873 of Puerto Rico's Civil Code provides three mechanisms by which the prescription of actions can be interrupted or 'tolled': '[(1)] [B]y their institution before the courts, [(2)] by extrajudicial claim of the creditor, and [(3)] by any act of acknowledgment of the debt by the debtor." *Rodríguez* v. *Suzuki Motor Corp.*, 570 F.3d 402, 407 (1st Cir. 2009) (alterations in original) (*quoting* 31 L.P.R.A. § 5303). "When a plaintiff tolls the statute of limitations by bringing an action before the courts, 'the mere filing of the complaint has a tolling effect,' rather than service of the summons." *Id*. (*quoting Duran Cepeda* v. *Morales Lebron*, 112 D.P.R. 623 (P.R. 1982)). "Under Puerto Rico tolling rules, which are based on the Spanish civil law, the institution of an action in court is commonly held not only to interrupt the running of the applicable statute of limitations but, at least in the event of a voluntary or usual non-prejudicial dismissal of the original action, to cause the entire limitations period to run anew from the date the previous action came to a definite end." *Id*. (*quoting Lopez-Gonzalez* v. *Mun. of Comerio*, 404 F.3d 548, 552 (1st Cir. 2005)). "An action comes to a 'definite end,' *inter alia*, on the date upon which such action is voluntarily dismissed without prejudice." *Id*. at 407-08 (*quoting Rodriguez-Garcia* v. *Mun. of Caguas*, 354 F.3d 91, 97 (1st Cir. 2004)). Here, the voluntary dismissal without prejudice of plaintiffs' complaint occurred in April 2012, thereby restarting the one-year limitations period.

Under Puerto Rico law at the time, "the interruption of prescription against one defendant also interrupt[ed] the prescription of claims against any other defendants who are solidarily liable with the first." *Id*. at 410 (*quoting Tokyo Marine & Fire Ins. Co.* v. *Perez y Cia, de P.P., Inc.*, 142 F.3d 1, 4 (1st Cir. 1998)); *see also* 31 L.P.R.A. § 5304.

And, under the law at the time, "joint tortfeasors [we]re solidarily liable." *Suzuki Motor*, 570 F.3d at 410 (*quoting Tokyo Marine*, 142 F.3d at 6). The theory was that "[t]he interruption of the prescription of the cause of action based on [an] unitary obligation . . . need only be performed once." *Id.* (alterations in original) (*quoting Tokyo Marine*, 142 F.3d at 6). In other words, as a matter of Commonwealth law, "the statute of limitations against all joint tortfeasors . . . [was] automatically tolled . . . provided that suit was timely brought against at least one of them." (ECF No. 175 at 8 n.4.)

The Puerto Rico Supreme Court overruled that "longstanding state law" in the case of *Fraguada Bonilla* v. *Hospital Auxilio Mutuo*, 186 D.P.R. 365 (P.R. 2012), which was handed down on August 13, 2012. (ECF No. 175 at 8 n.4.) Under the rule set forth in that case, which is "effective prospectively," "the timely filing of a complaint against an alleged joint tortfeasor does not toll the statute of limitations against the rest of the alleged joint tortfeasors," unless they share a perfect, as opposed to an imperfect, joint obligation. *Fraguada Bonilla*, 186 D.P.R. at 389, 393 (certified translation at 8-9). The final qualification is important. *Fraguada Bonilla* overruled prior case law only insofar as it applied to "obligations *in solidum*," or imperfect joint liabilities, which occur only "between persons who do not know each other, who are merely incidental co-debtors or [whose] interactions are sporadic." *Id*. at 380, 389 & n.14 (*quoting* J. R. León Alonso, *La Categoría de la obligación in solidum* 32-33 (1978)). By contrast, perfect joint liabilities occur "among several persons joined by a common interest, who interact frequently with each other or know each other." *Id*. at 380 (*quoting* León Alonso at 32). "Precisely because perfect solidarity arises from a pre-existing bond," even after *Fraguada Bonilla*,

interruptive acts do not operate individually and prescription with regard to one of the defendants does indeed reach the other in such cases." *Ramirez-Ortiz* v. *Corporcion Del Centro Cardiovascular*, 994 F. Supp. 2d 218, 223 (D.P.R. 2014); *see also Figueroa* v. *Valdes*, 2016 U.S. Dist. LEXIS 39729, *13-14 (D.P.R. Mar. 24, 2016) (recognizing that *Fraguada Bonilla* did not disrupt preexisting case law about how suing a joint tortfeasor automatically tolled the prescriptive period for all co-tortfeasors in perfect solidarity with the sued party).

When one party is vicariously liable for the acts of another under Puerto Rico law, the parties are in perfect solidarity with each other. *Id*. at 224. And, the relationship of apparent authority/agency between Pasión Ecuestre and Centro Ecuestre Madrigal, which both parties fostered, led not only to the latter's vicarious liability for the acts of the former, but also to perfect solidarity between them at least in relation to the former's guided horse rides. *See Grajales-Romero*, 194 F.3d at 293 (on Puerto Rico's recognition of the doctrine of apparent authority/agency); *In re Atl. Fin. Mgmt., Inc.*, 784 F.2d 29, 30 (1st Cir. 1986) (recognizing apparent authority as a subset of vicarious liability). Thus, if we are correct that *Fraguada Bonilla* overruled prior case law only as to imperfect (but not perfect) joint liabilities, then the limitations period that applies to Pasión Ecuestre was tolled alongside the one that applies to Centro Ecuestre Madrigal because the parties shared an apparent principal-agent relationship, placing them in perfect solidarity with each other. *See Ramirez-Ortiz*, 994 F. Supp. 2d at 223-24.

Another reason why Pasión Ecuestre was timely sued was because its insurer, Integrand Assurance, was timely sued, *see* ECF No. 175 at 34 n.28, and, under Puerto

Rico law, "insured defendants and their insurance companies are solidarily liable for the acts of the insured." *Tokyo Marine*, 142 F.3d at 7. Since the joint obligation undertaken by these parties was created by contract and operates pursuant to a statutory regime, they also share perfect solidarity over the liabilities covered by the insurance contract, which the parties agree includes plaintiffs' injuries. *See id.* at 7-10; *Arroyo-Torres* v. *González-Méndez*, 2016 U.S. Dist. LEXIS 23960, *6-17 (D.P.R. Feb. 26, 2016). In response, defendants might object that their joint insurer was initially sued "in its capacity as Insurer of Florencio Berríos and Centro Ecuestre Madrigal," *see* ECF No. 134 at 11, but the insurer was sued as the entity responsible to pay for any damages caused to plaintiffs by the joint tortfeasors as a result of the horse ride, and the record shows that "Integrand wrote a single general liability policy that covered [Centro Ecuestre] Madrigal, Inc., [and] Pasión [Ecuestre] . . . and which was in effect on the date of [plaintiffs'] accident." (ECF No. 175 at 13.) Because two parties in perfect solidarity with Pasión Ecuestre were timely sued, Pasión Ecuestre was also timely sued under *Fraguada Bonilla*.

The *Fraguada Bonilla* decision was issued less than two months before plaintiffs filed their federal court complaint and about four months after they had voluntarily dismissed their Commonwealth case without prejudice. It is clear that, up until the day that decision was issued, plaintiffs had a valid cause of action against Pasión Ecuestre and that the limitations period for that cause of action at least mirrored the one for their claim against Centro Ecuestre Madrigal. In the event that the rule set forth in *Fraguada Bonilla* shortened the limitations period for plaintiffs' claim against Pasión Ecuestre and barred it unexpectedly, due process would forbid the immediate application of that new

rule against this preexisting claim. *See Rogers* v. *United States*, 180 F.3d 349, 354 (1st Cir. 1999). Puerto Rico "cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action." *Id.* (*quoting Brown* v. *Angelone*, 150 F.3d 370, 373 (4th Cir. 1998)). "Where a shortened limitations period would bar previously-accrued claims," and a reasonable grace period has not been specified, "courts traditionally have provided that a 'reasonable time' shall be the shorter of: (1) the original limitation period, commencing at the time the action accrued, or (2) the new, shortened limitation period, commencing from the date the [new law] became effective." *Id.* (citing cases). In accordance with these rules, if we were to assume that the one-year limitations period for plaintiffs' claim against Pasión Ecuestre restarted when their Commonwealth case was voluntarily dismissed without prejudice in April 2012, then the February 2013 filing of their action against Pasión Ecuestre was still timely.

As to defendants' third argument in their Rule 50(a) motion, we denied it because their interpretation of *Santos* v. *Ramos Cobián*, 87 P.R.R. 446 (1963), was clearly wrong. Defendants argued that, in *Ramos Cobián*, the Puerto Rico Supreme Court had held that whenever a plaintiff contracts with a defendant to ride the defendant's horse for a short recreational ride, the plaintiff becomes the possessor of the horse for purposes of 31 L.P.R.A. § 5144, unless the plaintiff is a minor. Far from it. Although the plaintiff in that case was a minor, the fact that he was a minor did not play any role in the Court's legal analysis. Instead, the Court held that when a plaintiff is using a defendant's "horse at the moment of [an] accident, by mere leave or authorization, through pay, and for the

accidental enjoyment of an occasion, and for a brief period of minutes," the defendant will remain the "possessor" of the horse for purposes of 31 L.P.R.A. § 5144 because the plaintiff's temporary, one-time use of it does not evince sufficient "frequency, continuity, duration, and condition" to transfer legal possession of the horse over to the rider.  87 P.R.R. at 451.  Under this controlling precedent, Pasión Ecuestre and its owner possessed the horse that caused injuries to plaintiffs.  *See id*.

Our above reasons for denying defendants' Rule 50(a) motion naturally apply as well to our denial of their Rule 50(b) motion.  Moreover, insofar as defendants' Rule 50(b) motion raises arguments or claims not covered in their Rule 50(a) motion, those arguments and claims cannot be reviewed.

As to the timeliness of plaintiffs' suit against Pasión Ecuestre, defendants assert, in their Rule 50(b) motion, that the suit was untimely because there was "no evidence of reasonable effort [by plaintiffs] to ascertain the identity of [Pasión Ecuestre]."  (ECF No. 134 at 10.)  That assertion, as we repeatedly expressed at trial, is wrong.  It is wrong because the discovery abuses and bad-faith responses of Centro Ecuestre Madrigal led to plaintiffs, after many requests, learning of the identity of Pasión Ecuestre only in late January 2013.  Insofar as defendants claim that this issue was "a jury question" not decided by the verdict, *see* ECF No. 134 at 14, their Rule 50(b) was untimely because it was filed "later than 28 days after the jury was discharged."  *See* Fed. R. Civ. P. 50(b).

In any event, plaintiffs' suit against Pasión Ecuestre was timely because their suit against Integrand Assurance, a co-defendant in perfect solidarity with Pasión Ecuestre under defendants' joint insurance policy, was also timely.  Moreover, we sanctioned

Centro Ecuestre Madrigal for its discovery abuses and bad-faith responses to plaintiffs, forbidding it from arguing to the jury that it did not have an apparent principal-agent relationship with Pasión Ecuestre. As the apparent principal of Pasión Ecuestre, Centro Ecuestre Madrigal was vicariously liable for its agent's negligent or faulty acts and it also shared perfect solidarity with its agent over these liabilities, and so the timely filing of suit against Centro Ecuestre Madrigal automatically tolled the prescriptive period against Pasión Ecuestre, rendering the suit against Pasión Ecuestre timely as well. Because the timeliness of plaintiffs' suit against Pasión Ecuestre did not turn on factual questions about their due diligence, but on legal issues regarding the application of 31 L.P.R.A. § 5304 under *Fraguada Bonilla* to undisputed facts, we decided that the suit was timely as a matter of law.

As to whether Centro Ecuestre Madrigal and its owner, Calderón, should have been dismissed from the case, defendants argue that they should have been because, on the day that plaintiffs' injuries were caused, Pasión Ecuestre was operating the guided horse rides. (ECF No. 134 at 12-13.) However, this argument ignores why, as explained above, both Centro Ecuestre Madrigal and Calderón were vicariously liable for Pasión Ecuestre's liabilities, and why Calderón was also liable for them as a possessor of the offending horse.

Defendants failed to preserve their claim that liability under 31 L.P.R.A. § 5144 does not apply to them because of the rule set forth in *Rivera Pérez* v. *Carlo Aymat*, 104 D.P.R. 693 (P.R. 1976). (ECF No. 134 at 14-15.) After all, they did not raise that claim in their Rule 50(a) motion. In any event, the claim is predicated on a clear misreading of

*Rivera Pérez.* In that case, the Puerto Rico Supreme Court simply held that the owner of a horse was not liable for injuries to its unsupervised rider, when the rider freely decided to ride the horse despite having "had such difficulty with his legs that he could not settle properly on the saddle." *Rivera Pérez*, 104 D.P.R. at 694 (official translation). It was that decision that the Court analogized to "that of a pedestrian who voluntarily bursts in to cross in front of a vehicle without time to get to the opposite sidewalk," thereby exposing himself to "imponderable consequences." *Id.* at 695 (official translation). And, it was because the Court had found that the damage to the rider had arisen entirely from his own "fault" that the Court then held that the possessor of the horse was not liable for it. *Id.* (official translation). That holding did not challenge the Court's earlier holding in *Ramos Cobián* because 31 L.P.R.A. § 5144 has long provided that the "liability" of the possessor of an animal under it "shall cease only in case the damage should arise from . . . the fault of the person who may have suffered it." 31 L.P.R.A. § 5144. And, here, the jury found that defendants were liable for plaintiffs' injuries and that co-plaintiff Angela Rivera-Carrasquillo, who was the injured rider of the horse at issue in this case, was only at fault for 5% of her injuries. (ECF No. 126.) In turn, we reduced her damages, as found by the jury, by 5%. (ECF Nos. 126 at 2; 128.) 31 L.P.R.A. § 5144 and *Ramos Cobián* required nothing more.

In neither their Rule 50(a) motion, nor in their Rule 50(b) motion, did defendants ask us to have the jury find to what degree each of them was responsible for plaintiffs' injuries. In any event, because defendants are jointly liable for the total amount of damages, there was so need for such a finding by the jury.

For the above reasons, we **DENIED** defendants' Rule 50(b) motion in full.  (ECF No. 134.)

San Juan, Puerto Rico, this 25th day of April, 2016.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
